**Alfred LANCELLOTTI,
Plaintiff, Appellee,**

v.

**Honorable Thomas F. FAY, etc., et al.,
Defendants, Appellants.**

**No. 90–1122.**

United States Court of Appeals,
First Circuit.

Heard June 7, 1990.
Decided July 18, 1990.

Michael P. DeFanti with whom Hinckley, Allen, Snyder & Comen, was on brief, for defendants, appellants.

Marty C. Marran with whom Joseph E. Marran, Jr., was on brief, for plaintiff, appellee.

Before BREYER, Chief Judge, BOWNES, Senior Circuit Judge, and SELYA, Circuit Judge.

SELYA, Circuit Judge.

Appellants seek to persuade us that the district court applied too relaxed a behavioral standard in considering, and rejecting, their motion for sanctions against plaintiff-appellee Alfred Lancellotti and/or his counsel. The point is well taken.

### Prior Proceedings

This case arises from the ashes of a decade of matrimonial litigation in the Rhode Island courts which sparked, among other things, two published opinions by the state's highest tribunal. *See Lancellotti v. Lancellotti*, 481 A.2d 7 (R.I.1984); *Lancellotti v. Lancellotti*, 543 A.2d 680 (R.I.

1988). Rather than repastinating that terrain, we skip directly to the spot where the domestic dispute focused on monies unpaid and overdue. The state supreme court resolved that quarrel conclusively:

> We therefore remand the case and instruct the Family Court to order that Alfred pay, first, the arrearage and attorney's fees ordered by the Family Court judge on March 7, 1986 [and] ... second, the unpaid support from February 15, 1986, until April 7, 1987, the date of the hearing denying the motion to hold Alfred in contempt for continuing failure to pay support.
>
> \* \* \* \* \* \*
>
> In addition, we order Alfred to pay the unpaid alimony that has accrued since the date of the erroneous Family Court decision....

*Lancellotti v. Lancellotti*, 543 A.2d at 682.

Lancellotti declined to appear at the hearing on remand. The family court judge held him in contempt and ordered him incarcerated unless he paid the arrearages. When the judge issued a writ of arrest to enforce the order, Lancellotti petitioned for certiorari, claiming that the judge had abridged his constitutional rights by ordering him jailed without proof of ability to pay. The Rhode Island Supreme Court denied the petition on the ground "that in the proceedings below petitioner did not choose to offer evidence of his inability to comply with the Family Court's order respecting alimony, and the burden of establishing such inability to pay was clearly the petitioner's burden." *Lancellotti v. Lancellotti*, No. 89–596–M.P. (R.I. Feb. 23, 1989) (unpublished order).

Unfazed, Lancellotti sued in the United States District Court for the District of Rhode Island. Again invoking the Constitution and making substantially the same argument, he sought to enjoin the state supreme court justices and the family court judge from enforcing the outstanding orders. Appellee's former wife, Alma Lancellotti, intervened. The six defendants and the intervenor moved for dismissal and imposition of sanctions. The district court referred the matter to a United States

magistrate, who filed a written report (Report) recommending that the suit be dismissed and sanctions imposed. Plaintiff objected. The court heard argument and dismissed the complaint with prejudice because:

> ... [W]ere we to permit this type of proceeding to continue, we would in effect be sitting in appeal on determinations of the Supreme Court of the State of Rhode Island. [We] have neither that right nor that responsibility.... In effect, were we to participate in this type of inquiry, we would effectively serve as an Appellate Court to the Family Court of the State of Rhode Island in domestic matters.

*Lancellotti v. Fay*, No. 88–0735, bench decision at 2–3 (D.R.I. Jan. 11, 1990).[1] The lower court's judgment on the merits was unarguably correct, *see District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983) (federal district court "is without authority to review final determinations of [a state court] in judicial proceedings"); *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 296, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970) (same); *Rooker v. Fidelity Trust Co.* 263 U.S. 413, 415–16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923) (same), and Lancellotti has not appealed the dismissal order.

As to the Rule 11 motion, the magistrate recommended sanctions on the ground that, "[g]iven the longevity and clarity of the law governing the instant action ... plaintiff's complaint [was] not warranted by existing law, nor by a good faith argument for the extension, modification, or reversal of existing law." Report at 9.[2] The district court ruled that more was needed to justify sanctions. Bench Dec. at 5–6. Without faulting the finding of groundlessness, the judge declared that Rule 11 established a *conjunctive*, multi-part test, and found "the test ... not met here [because] ... this action is not brought for any improper purpose [and].... Plaintiff's Counsel sincerely believes that there may be an opportunity here for the Plaintiff to obtain relief." *Id.* at 6. On that basis, the judge declined to sanction Lancellotti or his counsel. The judicial defendants appealed.

### Historical Perspective

Fed.R.Civ.P. 11 was substantially revised in 1983.[3] Prior thereto, the Rule had not

---

1. The district court also cited and relied upon the Anti–Injunction Act, 28 U.S.C. § 2283, a statute which severely limits the power of a federal court to enjoin state court proceedings. The court observed that it was "being asked to ... enjoin the highest judicial officers of the State of Rhode Island from carrying out their constitutional mandate," and that it was barred from doing so in circumstances where no exception to the Act applied. Bench Dec. at 3–4.

2. The magistrate did not levy sanctions but merely recommended their imposition. Report at 10–11. Accordingly, the district court reviewed the sanctions question *de novo*. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b). Because all parties acquiesced in the methodology employed below, we need not confront today the vexing standard-of-review question recently considered by a Ninth Circuit panel in *Maisonville v. F2 America, Inc.*, 902 F.2d 746 (9th Cir. 1990). We intimate no view, therefore, on whether Rule 11 sanctions ordered by a magistrate are properly characterizable as "dispositive" or "non-dispositive" within the meaning of 28 U.S.C. § 636 and Rule 72.

3. The following text shows the additions and deletions effected by the 1983 amendments [Emphasis indicates additions; brackets indicate deletions; text also includes subsequent technical amendments]:

> **Rule 11. Signing of Pleadings, *Motions, and Other Papers; Sanctions***
>
> Every pleading, *motion, and other paper* of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's name, whose address shall be stated. A party who is not represented by an attorney shall sign the party's pleading, *motion, or other paper* and state the party's address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. The signature of an attorney *or party* constitutes a certificate by the signer that the signer has read the pleading, *motion, or other paper;* that to the best of the signer's knowledge, information, and belief [there is good ground to support it] *formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law,* and that it is not

been "effective in deterring [litigatory] abuses." Fed.R.Civ.P. 11 advisory committee's note (1983 amendments). This was partially because the "old" Rule spoke in subjective terms. *See Kale v. Combined Ins. Co.*, 861 F.2d 746, 757 n. 12 (1st Cir. 1988). Before the Rule was amended, therefore, Rule 11 sanctions could be awarded only upon a showing of bad faith. *See, e.g., Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir.1980) (per curiam). Over time, the purely subjective standard proved to be a toothless tiger. The need for stiffening the Rule—fueled by "[w]idespread concern over frivolous litigation and abusive practices of attorneys," Schwarzer, *Sanctions Under The New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 181 (1985)—was correspondingly great. This background is critically important since any "interpretation of the current Rule 11 must be guided, in part, by an understanding of the deficiencies in the original version of Rule 11 that led to its revision." *Cooter & Gell v. Hartmarx Corp.*, —— U.S. ——, ——, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990).

The redrafted Rule was designed to give the tiger some bite by "impos[ing] much more specific and extensive obligations" on parties and their counsel. Schwarzer, *supra*, at 181. These obligations included holding attorneys and parties alike to an affirmative duty of reasonable inquiry "more stringent than the original good-faith formula." Fed.R.Civ.P. 11 advisory committee's note (1983 amendments). In consequence, the amended Rule, "although derived from precedents resting on bad faith, is not so limited." Schwarzer, *supra*, at 185; *see also* Fed.R.Civ.P. 11 advisory committee's note (1983 amendments) (pointing out that "reference in the former text

to wilfulness as a prerequisite to disciplinary action has been deleted"); *Ballard's Serv. Center, Inc. v. Transue*, 865 F.2d 447, 449 (1st Cir.1989) (after 1983 amendments, "purely subjective bad faith" no longer required). In a nutshell, the revisers sought to expand Rule 11 to reach groundless filings which failed the test "of objective reasonableness under the circumstances existing at the time [of filing]," *Kale*, 861 F.2d at 758, irrespective of the filing party's state of mind.

### Discussion

The court below construed amended Rule 11 to preclude sanctions unless an attorney or party not only failed to make a "reasonable inquiry," but also did so without a "sincere[ ] belie[f]" that the challenged pleading might be availing. We strongly disagree. Such an interpretation would make the "new" Rule 11 less useful than its predecessor in combating abusive practices and would thereby undermine the goal of the 1983 amendments. Providing an automatic escape hatch from the duty of reasonable inquiry for pleaders who, while oblivious to the facts or the law, nevertheless blunder ahead in subjective good faith, would eviscerate the amended Rule and skew its laudable aim.

We do not believe that the drafters' language requires the result which the district court decreed. Although the wording of the amended Rule may possibly be ambiguous in this respect, the historical context and advisory committee notes unquestionably override any syntactical uncertainties. Not surprisingly, then, the amended Rule has rather consistently been read by federal appellate courts to reach groundless but "sincere" pleadings, as well as those which,

interposed for *any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.* If a pleading, *motion, or other paper* is not signed, *it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant.* [or is signed with intent to defeat the purpose of this rule; it may be stricken as sham and false and the action may proceed as though the pleading had not been served. For a wilful violation of this rule an attorney may be subjected to appro-

priate disciplinary action. Similar action may be taken if scandalous or indecent matter is inserted.] *If a pleading, motion, or other paper is signed in violation of this rule the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.*

while not devoid of all merit, were filed for some malign purpose. *See, e.g., Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir.1988); *Brown v. Federation of State Medical Boards*, 830 F.2d 1429, 1435–36 (7th Cir.1987); *Hale v. Harney*, 786 F.2d 688, 692 (5th Cir.1986); *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174 (D.C.Cir. 1985); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253–54 (2d Cir. 1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *see also* Schwarzer, *supra*, at 185. We, ourselves, have arrived at the same conclusion, albeit without extended discussion. *See Unanue–Casal v. Unanue–Casal*, 898 F.2d 839, 841 (1st Cir.1990).

■ In sum, Rule 11, in its present incarnation, should be read as requiring sanctions "when it appears that a pleading has been interposed for any improper purpose, *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Eastway*, 762 F.2d at 254 (emphasis in original). In other words, the "new" Rule contains not one, but two, grounds for sanctions: the "reasonable inquiry" clause, *see, e.g., Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752 (7th Cir.1988); *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830–31 (9th Cir.1986),[4] and the "improper purpose" clause, *see, e.g., Brown*, 830 F.2d at 1435; *Zaldivar*, 780 F.2d at 831–32. While bad faith remains sanctionable, it is now not a *sine qua non* to a Rule 11 impost. Put bluntly, a pure heart no longer excuses an empty head.

■ In this instance, appellants' motion charged appellee and his counsel with defying Rule 11's reasonable inquiry clause. Rather than assessing this charge under a standard of objective reasonableness, the district court applied a subjective test. This was error: appellants were plainly entitled to a determination of whether, viewed objectively, their litigation adversaries had made the "reasonable inquiry" which Rule 11 mandates. *See Figueroa–Ruiz v. Alegria*, 905 F.2d 545, 548 (1st Cir.1990) ("in normal circumstances, a district judge when confronted with a proper [Rule 11] motion has a duty to make an 'up' or 'down' ruling").

We have carefully considered our options, given what occurred below. Because the answer appears fairly obvious, it is tempting to do as appellants ask and pass directly on whether the duty of reasonable inquiry was flouted. On reflection, however, we believe the ends of justice would be best served if the district court, applying the proper legal principles, made the initial determination. For one thing, we have regularly preached "that the district court should be the focal point of Rule 11 determinations." *Figueroa–Ruiz, supra*, 905 F.2d at 548; *see also Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 393–94 (1st Cir.1990); *Kale*, 861 F.2d at 758.[5] For another thing, even if sanctions are in order, we would not avoid a remand by saying so at the appellate level. After all, the decision as to whether Lancellotti or his counsel or both should be sanctioned calls for an exercise of the trial court's sound discretion. *See, e.g., Hale*, 786 F.2d at 692.

---

**4.** This portion of Rule 11, referred to by some courts as the "frivolessness clause," *e.g., Zaldivar*, 780 F.2d at 830, is itself subdivided into two facets. A party or lawyer can run afoul of the "reasonable inquiry" clause by failing either (1) to make a reasonable inquiry into the facts or (2) to make a reasonable inquiry into (and an informed assessment of) the law. *See Brown*, 830 F.2d at 1435; *Thomas v. Capital Security Serv., Inc.*, 812 F.2d 984, 988 (5th Cir.1987), *aff'd in relevant part en banc*, 836 F.2d 866 (5th Cir.1988); *see also Ryan v. Clemente*, 901 F.2d 177, 179–81 (1st Cir.1990) (applying both facets). A violation of either subpart of the "reasonable

inquiry" clause triggers Rule 11, *see Thomas*, 812 F.2d at 989, mandating the imposition of an appropriate sanction.

**5.** To be sure, if the district court found that there was no Rule 11 violation, we would need to address on appeal whether that determination was an abuse of discretion. *See Cooter & Gell*, —— U.S. at ——, 110 S.Ct. at 2460; *Figueroa–Ruiz, supra*, 905 F.2d at 548. On the present record, we seriously doubt whether we could uphold such a finding—but a cogent explanation by the trial court might possibly make a difference.

It is likewise for nisi prius to decide what sanction is "appropriate" anent a particular violation. *See, e.g., Anderson*, 900 F.2d at 394 ("Sanctions come in a wide variety of guises. The trial judge is best positioned to decide what sanction best fits a particular case or best responds to a particular episode or pattern of errant conduct."); *Unanue–Casal*, 898 F.2d at 842 (similar); *see also* Fed.R.Civ.P. 11 advisory committee's note (1983 amendments) (discussing trial court's "discretion to tailor sanctions to the particular facts"). On balance, therefore, we believe the district court should determine, in the first instance, whether reasonable inquiry was made, and if not, the consequences which should ensue.

### Conclusion

We need go no further.[6] Amended Rule 11 sets up an objective standard of reasonableness under the circumstances. *See Kale*, 861 F.2d at 757. That standard is transgressed by (1) a violation of either subpart of the "reasonable inquiry" clause, or (2) a violation of the "improper purpose" clause. In effect, the court below impermissibly merged the two clauses; subjective good faith, i.e., lack of an improper purpose, no matter how abundant, does not absolve a lawyer's or litigant's failure to conduct a reasonable inquiry into the facts and the law. The sanctions motion must be reappraised under the correct legal criteria.

*We vacate the order denying sanctions to the judicial defendants and remand for further proceedings consistent herewith. We authorize the same district judge as before to act and leave to his discretion the nature of the further proceedings, if any, which may be required. Costs to appellants.*

---

**6.** Because the intervenor did not appeal, the denial of her motion for sanctions has become final and is unaffected by our holding today.